KINTZING v. BARTHOLEW. See Case No. 7,831.

---

## Case No. 7,834.

### KINTZING v. HUTCHINSON et al.

[34 Leg. Int. 365: [1] 7 Wkly. Notes Cas. 226.]

Circuit Court, D. New Jersey. Oct. 2, 1877.

COLLATERAL INHERITANCE TAX—WHAT SUBJECT TO, IN PENNSYLVANIA.

The choses in action, such as bonds, stocks, &c., of a decedent, not domiciled at his death, in Pennsylvania, passing to collateral heirs or legatees, but not passing under the intestate laws of that state, nor under any will proved and admin-

[1] [Reprinted from 34 Leg. Int. 365, by permission.]

istered in that state, are not subject to the Pennsylvania collateral inheritance tax.

[Cited in Allen v. Philadelphia Sav. Fund Soc., Case No. 234.]

[2][Hearing upon bill and answer: Bill in equity, filed by Elizabeth L. Kintzing, a citizen of New York, against Mahlon Hutchinson, a citizen of the state of New Jersey, and Samuel J. Sharpless. The bill alleged that John P. Hutchinson was in his life time a citizen of New Jersey, and was domiciled in that state at the time of his death, on Feb. 11, 1875; that he died intestate, possessed of a large personal estate, and that the complainant, as one of his nieces and next of kin, became entitled to one-fifteenth part of his personalty, distributable by his administrators after payment of his debts and the expenses of the administration; that the intestate at his death was possessed of stocks and loans, both coupons and registered, of various municipal and other corporations chartered under the laws of Pennsylvania, stocks of sundry national banks, organized under acts of congress, and carrying on business in said state, debts secured by bonds and mortgages on real estate within said state, and loans of the said commonwealth of Pennsylvania; that administration was granted on the estate of said John P. Hutchinson by the surrogate of Burlington county, New Jersey, to the defendants Mahlon Hutchinson, Samuel J. Sharpless, and Benjamin P. Hutchinson, since deceased; and that the surviving administrators, by virtue of the act of assembly of the state of Pennsylvania of April 8, 1872 (P. L. 44), filed of record with the register of wills of Philadelphia county a certified copy of the letters of administration granted them in New Jersey, and by means thereof, under the provision of said act, they became empowered and authorized to and did, collect, sell, assign, and convert the assets, securities, and personal property of·their intestate within the state of Pennsylvania, and carried the proceeds into their accounts as filed in Burlington county, New Jersey, without taking out, or being required by law to take out, ancillary letters in Pennsylvania or accounting there; that the defendants had filed their final account, which had been duly confirmed, in which they had included the proceeds of all the assets, securities, and personal property of their intestate realized in Pennsylvania; and that complainant had been paid her distributive share thereof.

· [The bill further averred that, before such payment was made to her, she was required to and did deposit with the defendant's administrators, as aforesaid, $3,000 of Pennsylvania Railroad registered bonds, and $1,000 of Lehigh Valley Railroad registered bonds, which they were to hold for the purpose of enabling them to pay out of the pro-

ceeds such sum for collateral inheritance tax upon the complainant's share of said John P. Hutchinson's estate, derived from investments in Pennsylvania, as might be determined to be due, and to reimburse them for all expenses of counsel fees, costs, and charges in reference to any claim for this tax. The bill further averred that, under the laws of Pennsylvania at the death of the intestate, no collateral inheritance tax had legally accrued to the state, and none of the laws of that state then in force had assumed to charge or impose this tax upon personal estates of decedents within this commonwealth, who were at their deaths domiciled in another state or country, and that any act assuming to impose such a tax would be unconstitutional; that no claim for the tax had ever been made by the state of Pennsylvania, and that as all the assets of the estate had been withdrawn from Pennsylvania, and the estate settled, the complainant was entitled to have the securities deposited by her with the defendants to meet this tax, returned to her; but that her request for the surrender and return of the said securities had been refused by the defendants. The bill prayed: (1) A disclosure by the defendants of the assets of their intestate which were in Pennsylvania at his death, and which had been realized from and brought into their accounts; (2) that the defendants disclose whether any claim for this collateral inheritance tax had been made upon them; and (3) that it be decreed that no collateral inheritance tax is due by the complainant on her share of said estate, and that the defendants deliver up and surrender to the complainant the said bonds deposited by her with them.

[The answer of the defendants admitted the material facts averred in the bill, and set forth in detail the various assets of the personal estate of the intestate which, at the time of his death, were in the state of Pennsylvania. The defendants admitted holding the securities claimed, on the terms stated in the bill, and expressed a willingness to return them if it should be judicially determined that no collateral inheritance tax was due by the complainant on her share of the estate; that the attorney-general of the commonwealth of Pennsylvania had been notified of the pendency of this suit, and called on to intervene and assert whatever claim the said commonwealth might have against the securities so deposited with the defendants for or in respect of the collateral inheritance tax in question.

[John G. Johnson, for complainant.

[The Case of the Foreign-Held Bonds, 15 Wall. [S2 U. S.] 300, is conclusive against the right of a state to tax debts due by its citizens to foreign creditors, and rules this case as to all the personal property sought to be taxed, save the stock of corporations chartered by the state of Pennsylvania; and

shares of stock of this character are neither within the letter nor spirit of the collateral inheritance act of April 7, 1826 (9 Smith's Laws 146; Purd. Dig. p. 214, pl. 1). The words "being within this commonwealth," in this act, refer to the person dying, and not to the estate which passes by the death. Property may be within the commonwealth, but the estate or interest therein, which is the subject matter of taxation, is not a thing having locality. The leading case in England upon this subject is Thomson v. Advocate-General, 12 Clark & F. 1, where the house of lords decided that personal property, having no situs of its own, followed the domicil of the testator, and that upon the law of his domicil depended the question of the liability of the legacy to duty. This overruled the old rule, upon the authority of which the Pennsylvania cases Com. v. Smith, 5 Barr. [5 Pa. St.] 143, and In re Alexander's Estate, 4 Pa. Law J. 453, lay down the contrary doctrine. The interpretation given to the act of 1826 in these cases is based upon no reasoning, and this court will accord the complainant the protection of a proper construction. But conceding that these decisions, with the act of 11 March, 1850 (P. L. 170; Purd. Dig. p. 216, pl. 8), settle that the estate within the commonwealth is what is contemplated as the subject of the tax, still this case does not fall within its terms. Shares of stock are mere choses in action, and have no situs other than their owner's domicil. Somerville v. Lord Somerville, 5 Ves. 750; note to Jackson v. Forbes, 2 Cromp. & J. 405. Again, the act of 1826. if it means what the attorney general claims, is unconstitutional, in that the property taxed by it is not within the state. The stockholder owns no portion of the corporate assets; all that he is entitled to is to demand his dividends, and until these are declared he gets nothing. Therefore he stands as a creditor of the corporation, entitled to sue for their recovery, and his position is similar to that of the bondholder who was held not liable to be taxed in the Foreign-Held Bond Case. Again, the tax is unconstitutional, because it is not levied upon property, but upon the right of a citizen of another state to receive what the law of his state gives to him, as a succession or inheritance. There is no warrant for such taxation, no correlative protection is offered, and no equivalent is given for it.

[George Lear, Atty. Gen., for the Commonwealth of Pennsylvania.

[There can be no question but that this property is subject to the tax imposed by the act of 1826. Com. v. Smith, supra, decided that it was not the person, but the estate within the commonwealth, upon which the tax was levied. The act of 1850 extended the provisions of the act of 1826, in consequence of the decision in Com. v.

Smith, to persons dying domiciled within the commonwealth as well as to estates. And this act was applied in Re Short's Estate, 4 Harris [16 Pa. St.] 63. The cases of Railroad Co. v. Jackson, 7 Wall. [74 U. S.] 262, and the Foreign-Held Bonds, supra, do not rule this case. This is not a tax, in the strict sense of the word, but a condition imposed upon the legatee or distributee before he can receive his interest. It is a share taken by the commonwealth before the beneficiaries have any rights in the distribution for the aid which it grants their representatives in the collection of the assets of the decedent.

[The provision of the federal constitution, that the citizens of each state shall be entitled to the privileges and immunities of citizens in the several states applies only to the personal privileges of citizens in their private capacity, and not in any official or fiduciary relation. The right of the owner to take this property out of the state at any time is a natural right, which could not be prohibited him; while the right of this distributee, who takes by descent, is not a natural but a legal right, which must be taken and accepted under the conditions and according to the terms which the law prescribes. The actual situs of the property, and not the domicil of the owner, is the true guide in determining the question under the law of what state it shall be taxed. The converse of this proposition is founded on a fiction, which has been repudiated in several states. Alvany v. Powell, 2 Jones' Eq. 51; State v. St. Louis County Court, 47 Mo. 594. In the Case of the Foreign-Held Bonds certain public securities, consisting of state bonds and bonds of municipal bodies (such as there are nearly $300,000 worth of here), were expressly excepted from the rulings of the decision. Again, the situs for taxation of national bank stock is fixed by act of congress of 1864 (13 Stat. 112), at the place where the bank is located, and not elsewhere, and this has been declared by act of 10 February, 1868 (15 Stat. 34), to mean the state within which the bank is located.

[Joseph B. Townsend, for defendants.

[The real question involved here is not whether situs by domicil will exempt specific securities, stocks, etc., from this tax, but whether the succession to personalty in this state under a foreign law is taxable. Strode v. Com., 2 Smith [52 Pa. St.] 189, decided upon this very act, holds that it is the succession to the property which is taxed, and not the specific securities in which it is invested. Now, as it is a well-settled law that questions of succession to personal property are governed by the law of the decedent's domicil, which in this case was New Jersey, it is clear that this tax cannot be imposed. Again, the legislation of Pennsylvania since 1858 is a virtual concession that this estate is exempted from the tax. The act of April 10, 1849 (P.

L. 571; Purd. Dig. p. 215, pl. 4), making property of this very character subject to the tax, was expressly repealed by the act of April 22, 1858 (P. L. 470). Then followed the various acts, ending with that of April 8, 1872 (P. L. 44; Purd. Dig. p. 421, pl. 84), which swept away all necessity for a local administration of the estates of non-residents, which was the sole basis and reason of the decisions in Com. v. Smith and In re Alexander's Estate, supra. The Case of the Foreign-Held Bonds rules this case. The court there say that the power of a state to tax is limited to persons, property, and business within her jurisdiction. When the decedent died, his personal estate passed into the hands of his administration in New Jersey, for the use, so far as the distributive balance is concerned, of his next of kin entitled under the laws of that state, without the aid of the machinery of the registers or probate courts of Pennsylvania to give effect to those rights or to accomplish the conversion of the assets.]²

STRONG, Circuit Justice. This case has been elaborately argued, and I have received all the assistance that counsel can give. There is no controversy between the parties respecting the material facts. The testator at his death was domiciled in New Jersey. His will was proved and administered there, and there his executors have settled their final accounts. They sought no aid, and they had none from the intestate laws of Pennsylvania, from the courts of the state, or from any will proved in the state. At the time of his death the testator owned loans, stocks and other personal property, consisting of state loans of Pennsylvania, municipal bonds of that state, bonds and stocks of its corporations, shares of stock in national banks located in that state, and various claims against Pennsylvania debtors. These stocks and loans were transferred by the executors of the testator's will by virtue of the letters testamentary granted to them in New Jersey. No letters of administration were ever taken out in Pennsylvania. Such are the material facts, and the sole question of the case is, whether the property is subject to a tax under the laws of Pennsylvania, it having passed by the will to collateral heirs or legatees of the testator.

The collateral inheritance tax laws of the state are obscure, needlessly so, and the obscurity has not been removed by the decisions of its supreme court. The original legislative act of the state, enacted April 7, 1826, imposed a tax of two and an-half per cent (subsequently raised to five) "upon all estates, real personal and mixed, of every kind whatsoever, passing from any person who may die seized or possessed of such estate, being within this commonwealth, either by will, or under the intestate laws thereof, * *

&c., to any person or persons, or to bodies politic or corporate, in trust or otherwise, other than to or for the use of father, mother, husband, wife, children, and lineal descendants, born in lawful wedlock;" and it made it the duty of all executors, administrators and their sureties, to pay the tax. It expressly enacted that "all executors, administrators and their sureties, shall only be discharged from liability for the amount of the tax on estates, the settlement of which they may be charged with by having paid the same," as directed by the laws in 1847. Strangely enough, it was said by the supreme court of the state that the words of the statute, "being within this commonwealth," referred to the estate and not to the decedent, that it was the estate within the commonwealth, and not the person, on which the tax was levied. In view of this declaration, probably, the legislature (in 1850) passed a declaratory act, enacting "that the words in the act of 1826," being within this commonwealth, "should be construed as relating to all persons who had been at the time of their decease or then might be domiciled within the commonwealth, as well as to estates." Other statutes, respecting the tax and the mode of its collection, have, from time to time, been enacted, but none of them affect the present case. The act of April 10, 1849, which would be important if it remained in force, was repealed by the act of April 22, 1858.

The question I have to determine, then, is, whether, under the act of 1826, as construed by the act of 1850, the choses in action of a decedent, not domiciled at his death in Pennsylvania, passing to collateral heirs or legatees, but not passing under the intestate laws of that state, nor under any will proved and administered in that state, are subject to a tax, if they are right in action against the state or its corporations, or against inhabitants of the state. I say choses in action, for all the property claimed in this case to be liable to a tax was intangible, mere rights in action. The question is primarily one of statutory construction, and I think exclusively such, for, in my view, it is unnecessary to inquire how far a state can impose a tax that operates extra-territorially.

It must be admitted that the language of the statute is broad and general. It embraces all estates, real, personal and mixed, being within the commonwealth, passing to collateral heirs or legatees, either by will, or under the intestate laws, or by deed, grant, bargain, or sale, intended to take effect in possession or enjoyment after the death of the grantor or bargainor. But, notwithstanding the generality of the statutory words, they must, I think, receive a reasonable construction, in harmony with the construction usually given to such statutes, and consistent with the legislative power of the state. The English act of parliament of 36 Geo. III. enacts that "every legacy given by any will or testa-

mentary instrument to any person" shall be liable to a succession tax, and "that any gift by will of any person, which shall, by virtue of such will, have effect, or be satisfied out of the personal estate of such person, shall be deemed a legacy within the meaning of the act." Comprehensive as the act is, it is now firmly held by the English courts that English stocks, owned by non-resident testators, are not liable to the tax. So it was decided by the house of lords, in Thomson v. Advocate General, 12 Clark & F. 1, and the same construction was adopted in Attorney General v. Napier, 6 Exch. 217. The ruling is based upon the general doctrine of the common law, that personal property, having no situs of its own, attends the person and domicil of its owner, and hence that the law of the domicil of a testator or intestate must determine whether his personal estate is liable to a legacy duty. I shall spend no time in arguing that such is sound doctrine. It was asserted early, by Lord Thurlow, in Bruce v. Bruce, 2 Bos. & P. 231, note, where he said: "Personal property follows the person of the owner, and in case of his decease must go according to the law of the country where he had his domicil, for the actual situs of the goods has no influence;" such is the universally recognized rule alike of the common law, the civil law, and the jus gentium. I see no sufficient reason why it is not applicable to the Pennsylvania statutes. The law of that state, respecting the legal situs of personal property, is the same as the law of England. No statute has attempted to change it. It is there held, as elsewhere, that transfers of right and devolutions of personalty by will, or intestacy, are always governed by the law of the owner's domicil: Desesbats v. Berquer, 1 Bin. 336. To the same effect is McKeen v. Northampton Co., 49 Pa. St. 519. It is perfectly clear that the subject of taxation, whatever it may be, must be within the territorial jurisdiction of the state that imposes the tax. Hence a tax law must be construed as applying to nothing extra-territorial, no matter how general its language may be. If a tax be laid upon a person the person must be within the jurisdiction; if upon property, the situs of the property must be in the state. Neither personal nor real property can have a situs in two states.

A person domiciliated in another state, though he owns loans of the commonwealth of Pennsylvania, or stocks of its corporations, or claims against its citizens, has no estate by virtue thereof within the commonwealth. His estate or ownership is where he resides, and is taxable there because he resides there. Neither he nor his estate is within the jurisdiction of Pennsylvania.

Turning now to a more detailed examination of the act of 1826, I find in it, much that indicates the absence of any intention to tax any stocks, loans, or rights in action of decedents, domiciled in other jurisdictions. As I have noticed it imposes upon the executors and administrators of the decedent, whose estate is made liable to the tax, the duty of paying it. This must mean domestic executors and administrators. It is not to be supposed that the legislature intended to control or impose liabilities upon foreign personal representatives of foreign decedents. They are not subject to its jurisdiction, and if such an intention existed, the attempt to carry into effect would be vain, performance of the duties enjoined could not be enforced.

Again, the tax is laid, not upon the personal property found in the state, or (using the words of the statute) "being within the commonwealth," but upon the estate therein, by whomsoever owned, if it passes to collaterals. Personal estate of a decedent, whether it passes by will or descent, is ownership of what may remain after the payment of debts and expenses of administration. This is the relation in which the owner stands to the property. It is not the property itself. It is intangible, and, as I have said, it has no legal situs apart from the person and domicil of the owner. The domiciled inhabitant of Pennsylvania is taxable, and he is taxed upon his stocks in extra state corporations, and upon the debts due to him by the citizens and corporations of other states. The reason, and the only justification for this is, that the situs of such property or rights, is with him at his domicil. This has been decided: McKeen v. Northampton Co., cited supra. The same is true of the collateral inheritance tax. But taxation levied upon a domiciliated inhabitant of the state for the loans of another state, or for the stocks of foreign corporations, or for rights in action he may have against debtors in another state, proceeds upon the assumption that the situs of such property is in the state where the tax is laid. It cannot be in that state and at the same time in another. No one can doubt that New Jersey might have taxed the identical estate which it now claimed on behalf of the defendants Pennsylvania has taxed. The truth is, it is impossible to disregard domicil when the inquiry is the situs of rights in action, or to personalty generally, and where is legislative jurisdiction over them. I think the act of 1826 did not disregard it. With the full knowledge that such rights have their situs with the person of the owner, the tax was laid only on personal property "being within the commonwealth." That must mean legally being there. If not, no personal property, not actually in the state, is taxed. Yet the contrary is the ruling of its courts. No attempt has been made to change the common law respecting the situation of such property. Indeed, I am not prepared to admit that in all cases, personal property, not in action, but tangible, and capable of manucaption, is within the purview of the statute. If a domiciled inhabitant of Ohio sends by rail through Pennsylvania, shipped for New York, a thousand barrels of flour, and dies intestate during its passage through the state, leaving only col-

lateral heirs, is the flour subjected by the act to a five per cent. tax? If a citizen of New Jersey crosses the Delaware with his horses and carriage to shop in Philadelphia, and dies before his return leaving a will bequeathing his property to collateral legatees, must a tax be paid to Pennsylvania of five per cent. on the value of the carriage and horses? I cannot believe that such was the intention of the law. If thus construed it would lead to the most absurd and unjust results. I think no such construction has ever been given to it. Yet the cases put are those in which the property has an actual situs within the state. In the case I have in hand, there was no actual situs apart from the legal situs with the owner.

The act contains another definition of the subject it intended to tax, which is very significant. The subject is not generally "estates" being within the commonwealth, but estates being within the commonwealth "passing" to collateral heirs or legatees, "either by will, or under the intestate laws thereof." Estates not passing by will or under the intestate laws of the state, or by deed or grant intended to take effect after the death of the decedent, are not embraced within the statute. This is very clear, and it is equally clear that no estate of Mr. Hutchinson passed at his death under the intestate laws of Pennsylvania or by virtue of any deed or grant he made, intended to take effect after his death. Nor did the estate pass by any will known to the laws of Pennsylvania. The transmission to collaterals was effected by a New Jersey will, never proved, or administered in Pennsylvania. It is no more to be admitted that the act speaks of foreign wills than it is that it speaks of foreign executors and administrators. Devolution under the intestate laws of the state, or under wills authorized by the state, were, in my opinion, alone intended.

For these reasons I conclude that the statute of 1826 has no reference to such estates or property as passed to these defendants for distribution under the will of their testator, and which is now claimed was taxable. And I think Com. v. Smith, 5 Barr [5 Pa. St.] 142, if carefully examined, will be found not necessarily inconsistent with this conclusion, whatever may be said of some of the observations of the judge who delivered the opinion. That was a case of testacy. The testator, after having been domiciled in Philadelphia, acquired a domicil in France, where he died. By his will, after describing himself as of Philadelphia, he appointed his brother of that city the executor, and bequeathed a legacy to a subject of France. The property of the testator consisted of a bond secured by mortgage upon Philadelphia property, together with bills and notes of persons residing there, and stocks of Pennsylvania and New Jersey corporations. The will was proved in Philadelphia where the administration of the estate was to be set-

tled. The court held that all the testator's estate in Philadelphia at the time of his decease was subject to the collateral inheritance tax, but for what reasons is not very clearly stated. I do not understand the decision to have rested solely on the ground, that the bonds and stocks were an estate being within the commonwealth. It seems rather to have rested on the fact that the will was proved and administered in the state. Thus the judge said: "It is the amount of the estate being within the commonwealth, passing either by will or descent, that the act makes subject to the collateral tax, and the domicil has nothing to do with the question. If it is an intestate estate, and administration is granted in Pennsylvania, to enable the administrator to collect the assets, the administrator pays the tax out of the aggregate of the estate. If a will be proved and administered in Pennsylvania, the executor deducts the collateral inheritance tax from the devices, unless the will directs otherwise." Thus it appears the place of administration and authority for it were considered important. Concede that the case is authority for all it decided. The present case differs materially in its facts. Here there was no administration in the state, no letters testamentary, and no ancillary administration, and no personal representatives amenable to the law. So in Re Alexander's Estate, 4 Pa. Law J. 448, in the orphans' court of Philadelphia, all that was decided was, that county stock and Pennsylvania state stock, belonging to a decedent domiciled at his death in London, is subject to the collateral inheritance tax, where there has been a new administration in the state. It was because the aid of the state laws had been invoked, and there had been an election to consider the fund as being within the commonwealth. Such is not the present case.

I shall therefore decree in favor of the complainants, and in accordance with the third prayer of the bill.

Let a decree be prepared.